UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ANTHONY TORRES

v.

JOHN DROUN, et al.[1]

PRISONER
Case No. 3:01CV1844(DJS)(TPS)

**RULING ON DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S MOTION FOR RECUSAL**

The plaintiff, Anthony Torres, is currently confined at the Northern Correctional Institution in Somers, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915 alleging that the defendants violated his right to due process by issuing him a false disciplinary report, finding him guilty of the infraction and directing him to pay a fine. Pending is the defendants' amended motion to dismiss and plaintiff's motion for recusal. For the reasons that follow, the motion for recusal is denied and the motion to dismiss is granted.

I.   Motion for Recusal [doc. # 56]

The plaintiff is seeking the recusal of the undersigned for failure to issue a ruling on the defendants' amended motion to dismiss. A judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test employed to determine whether recusal is required is an objective one. In re Drexel Burnham Lambert Inc.,

---

[1] The named defendants in the complaint are Correctional Officers John Avery and John Droun, Unit Manager Ronald Potter, Disciplinary Report Investigators John Callender and John DeFrancisco, Counselor Thomas Conway, Disciplinary Hearing Officer Jane Soto, Warden George Wezner, Deputy Warden Richard C. Flodquist and John Does 1-5.

861 F.2d 1307, 1313 (2d Cir. 1988), cert. denied, 490 U.S. 1102 (1989). The judge must recuse himself if circumstances exist which constitute an objectively reasonable basis upon which to question the judge's impartiality, i.e., if circumstances show "a deep-seated favoritism or antagonism that would make fair judgment almost impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required." Id.

In this case, petitioner seeks recusal of the undersigned and Magistrate Judge Fitzsimmons because he claims the court has taken an unreasonable amount of time to rule on the defendants' motion to dismiss. The plaintiff's dissatisfaction with the court's processing of his case is insufficient to support a motion for recusal. Because the plaintiff has not identified any factors that show a "deep-seated favoritism or antagonism" to support his claim that the undersigned is not impartial in this case, the plaintiff's request for recusal is denied.

II.   Motion to Dismiss [doc. # 47]

The defendants move to dismiss the complaint on seven grounds. The plaintiff opposes the motion.

A.   Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See

Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In reviewing this motion, the court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

B.   Facts

In May 1998, the plaintiff was confined at Cheshire Correctional Institution. On May 13, 1998, the plaintiff filed a written complaint with a "high-ranking CCI official" against Correctional Officer Droun and other Department of Correction officials. Compl. at 9. The plaintiff claimed these employees had committed "an act of gross misconduct towards the plaintiff and demanded disciplinary action be taken against" the employees. Id. The plaintiff alleges that no action was taken against Officer Droun or the other Department of Correction officials.

On September 10, 1998, Officers Droun and Avery conducted a routine search of the plaintiff's cell. Officer Avery initially found no infractions in the cell. After Officer Avery

3

spoke to Officer Droun he searched the cell again and then issued the plaintiff and his cellmate disciplinary tickets for destruction of property because their mattresses were torn. The plaintiff claims that his mattress was torn when it was given to him by Department of Correction officials. Officers Avery and Droun did not search any other cell in the block. The plaintiff believed that the disciplinary reports were issued in retaliation for his filing a complaint against Officer Droun some four months earlier. The plaintiff wrote to Unit Manager Potter and spoke to him on September 11, 1998 regarding the alleged retaliatory disciplinary reports, but he failed to investigate the matter.

On September 11, 1998, Officer Avery searched four other cells in the plaintiff's cell block. The plaintiff claims all four cells contained torn mattresses, but Officer Avery did not issue a disciplinary report to the inmates in those cells.

On September 16, 1998, Disciplinary Investigator Callender interviewed the plaintiff concerning the disciplinary report. The plaintiff alleges that Investigator Callender refused to listen to his defenses and his claims that Officers Droun and Avery issued the report in retaliation for a complaint filed by him. The plaintiff alleges that he informed Investigator Callender that he had informed Unit Manager Potter and Counselor Conway of the torn mattress prior to September 10, 1998.

On September 21, 1998, Disciplinary Investigators Callender and DeFrancisco interviewed the plaintiff concerning the disciplinary report. Both investigators spoke to the plaintiff in a loud, threatening and illogical manner. The plaintiff provided the investigators with a written statement from his cellmate regarding the torn mattresses, the name of an inmate witness and documents to be submitted at the hearing. One of the investigators interviewed the

4

inmate witness. The plaintiff and his cellmate met with their hearing advocate on September 21, 1998. On September 29, 1998, the plaintiff, his cellmate and the plaintiff's advocate appeared at a disciplinary hearing before Hearing Officer Soto. After the plaintiff submitted his written defense to the disciplinary charge, Officer Soto asked him to step outside the hearing room. The plaintiff claims that he heard Investigator Callender tell Officer Soto that over ninety officers at Cheshire had signed a petition directed to the warden to transfer the plaintiff from Cheshire due the plaintiff's harassment of officers. When the plaintiff returned to the hearing room, Unit Manager Potter and Counselor Conway denied being notified by the plaintiff about the torn mattress prior to September 10, 1998. Officer Soto found the plaintiff guilty and his cellmate not guilty of the same offense. Officer Soto imposed sanctions consisting of a $60.00 for the damage to the mattress.

The plaintiff alleges that Officer Soto and Investigator Callender refused to provide him with a a copy of the disciplinary hearing process form and his advocate did not respond to his letters seeking a copy of the form. The plaintiff also alleges that John Does ## 1-5, who worked in his housing unit, refused to assist him in obtaining an appeal form. Counselor Conway refused to provide the plaintiff with a copy of the disciplinary report.

On October 4, 1998, the plaintiff drafted a disciplinary appeal form and submitted it for filing. On October 13, 1998, Officer Soto and Investigator Callender rejected it and provided the plaintiff with an official appeal form, but did not provide the plaintiff with a copy of the disciplinary hearing process form. The plaintiff claims that he could not appeal the guilty finding and sanctions imposed on September 29, 1998, because he did not have the disciplinary hearing process form. The plaintiff alleges his attempts to obtain the disciplinary hearing process form

5

were ignored or dismissed by Warden Wezner and Deputy Warden Flodquist.

The plaintiff claims that he has refused to put any money in his prisoner account because he does not want to pay the $60.00 fine. As a result, he has been unable to purchase any items from the commissary or subscribe to publications. The plaintiff seeks declaratory relief and an order vacating the guilty finding and imposition of the $60.00 fine.

C.  Discussion

The defendants have filed a motion to dismiss on seven grounds: (1) plaintiff's claims against Avery and Droun are barred by the statute of limitations; (2) the plaintiff cannot establish that he will be irreparably harmed if his claims for injunctive relief are not granted and the claims for injunctive relief are moot; (3) the plaintiff's allegations against Investigator DeFrancisco fail to state a claim; (4) plaintiff fails to set forth a legally sufficient due process claim; (5) plaintiff has no legal interest in having Officer Droun disciplined; and (6) the claims against the John Doe defendants must be dismissed because he has not been served.

1.  Claims Against Officers Avery and Droun

The defendants contend that the claims against Avery and Droun are barred by the three-year statute of limitations. The plaintiff claims that the statute of limitations should be tolled to permit him to proceed as to the claims against Droun and Avery.

The plaintiff alleges that on September 10, 1998, Officers Avery and Droun conducted a search of his cell for no reason and then issued him a disciplinary report for destroying his mattress. The plaintiff claims that these actions were taken in retaliation for his filing of a complaint against Officer Droun in May 1998. The plaintiff also alleges that on September 11, 1998, Officer Avery conducted searches of other cells in his housing unit, but did not issue any

6

disciplinary reports to the inmates in those cells.

The limitations period for filing a section 1983 action is three years. See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994)(holding that, in Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52-577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). The complaint indicates that the plaintiff has been aware of his cause of action since the issuance of the allegedly false disciplinary report by Officers Avery and Droun on September 10, 1998. Thus, his claim against those officers accrued on September 10, 1998. The plaintiff did not file his complaint until September 17, 2001, the day he certified that he had mailed a copy of it to the Attorney General's Office. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a pro se prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court)(citing Houston v. Lack, 487 U.S. 266, 270 (1988)). Unless the limitations period is equitably tolled, the plaintiff's claims against Officer Droun and Avery are time-barred.

"[Q]uestions of tolling . . . are governed by state law." Schmidt v. Devino, 106 F. Supp. 2d 345, 350 (D. Conn. 2000). "A statute of limitations may be tolled as necessary to avoid inequitable circumstances. Equitable tolling applies as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." Iavorski v. INS, 232 F.3d 124, 129 (2d Cir. 2000) (internal citations and quotation marks omitted and alteration in original). In addition, the federal courts recognize the applicability of "equitable tolling" where the defendant's actions are continuing. See, e.g., Wingfield v. United Technologies Corp., 678 F. Supp. 973, 979 (D. Conn. 1988) (applying equitable tolling to continuing acts of employment

7

discrimination). There are no allegations suggesting a continuing course of conduct with respect to actions by Officers Droun and Avery. Neither officer is mentioned in the complaint other than in connection with the September 10, 1998 cell search and issuance of the disciplinary report and the September 11, 1998, cell searches of other inmates in the housing unit.

Connecticut law also recognizes the fraudulent concealment doctrine to equitably toll the limitations period. See Conn. Gen. Stat. §52-595. The limitations period is tolled until the plaintiff discovers or reasonably should have discovered the cause of action. See In re State Police Litig., 888 F. Supp. 1235, 1249-50 (D. Conn. 1995), appeal dismissed, 88 F.3d 111 (2d Cir. 1996). To establish fraudulent concealment, the plaintiff must demonstrate "that the defendant took 'some misleading, deceptive or otherwise contrived action' to conceal information material to the plaintiff's case." Sprint Communications Co. v. F.C.C., 76 F.3d 1221, 1226 (D.C. Cir. 1996) (internal citation omitted).

Here, the plaintiff was aware of his claims against Officers Droun and Avery immediately. The plaintiff informed Unit Manager Potter of the improper cell search and issuance of the false disciplinary report in writing on September 10, 1998, and in person on September 11, 1998. Thus, the plaintiff has alleged no facts that would warrant equitable tolling based upon fraudulent concealment.

In a declaration filed by the plaintiff with his complaint, he alleges that he had drafted his complaint and completed his application to proceed in forma pauperis and prisoner authorization form in early August 2001. He claims that he did not file his complaint at that time because he did not have his certified trust account statement to attach to the application to proceed in forma pauperis. He alleges that he stored his complaint and in forma pauperis application in his

8

property boxes which were kept in his cell. He received his account statement on August 23, 2001, but was unable to retrieve his complaint because prison officials would not permit him to access his property boxes. He received all of the legal files, including the complaint on September 13, 2001. As stated above, the plaintiff certified that he had mailed a copy of the complaint to the Attorney General's Office on September 17, 2001, and the court deems the complaint as having been filed on that date.

Research has revealed no Connecticut statutes or tolling provisions which would warrant tolling of the statute of limitations due to the alleged delays by prison officials in providing the plaintiff with a trust account statement and access to his legal files. The plaintiff does not explain why he waited until one month before the statute of limitations was to run before beginning to draft his complaint and does not allege that he was prevented from filing his complaint at any time before he decided to draft his complaint. In addition, the court notes that in August 2001, the plaintiff was aware that he could file his complaint, application to proceed in forma pauperis and prisoner authorization form without the certified trust fund account statement because he had done just that in another case file by him in 2000. In that case <u>Torres v. Levesque</u>, 3:00cv2295 (GLG), the plaintiff's application to proceed in forma pauperis did not include a certified trust fund account documenting the previous six months of account activity. The court did not dismiss the plaintiff's case, but instead informed the plaintiff that he must submit the trust fund account documentation and granted him several extensions of time to do so. The plaintiff subsequently submitted the necessary documentation and the court ordered the United States Marshal to serve the complaint on the defendants. The court concludes that the plaintiff has failed to allege that he was prevented from filing this action at any time within the

9

limitations period. Thus, the court can discern no basis upon which the limitations period should be equitably tolled as to Officers Avery and Droun. See Paige v. Police Dep't of the City of Schenectady, 264 F.3d 197, 199-200 (2d Cir. 2001) (noting that claim is time-barred where plaintiff is aware of cause of action and not prevented from filing suit, but does not do so until the limitations period expires). Thus, the defendants' motion is granted on the ground that the claims against Officers Droun and Avery are time-barred.

    2.    Injunctive Relief

The defendants argue that the plaintiff has not alleged that he will be irreparably harmed if his request for injunctive relief is not granted. The plaintiff responds that he is unable to purchase items from the prison commissary and from businesses outside the prison because the $60.00 fine has not been paid.

"Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989) (citing Rondeau v. Mosinee Paper Co., 422 U.S. 49, 57 (1975)). To demonstrate irreparable harm, plaintiff must show an "'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd, 426 U.S. 943 (1976).

The plaintiff seeks injunctive relief in the form of an order directing the defendants to

vacate the guilty finding and expunge the $60.00 fine from his prison record. Aside from his allegations that he is unable to purchase items from the commissary or vendors outside the prison due the fine, the plaintiff fails to allege that he has been harmed in any other way by the guilty finding and fine imposed pursuant to the guilty finding. The court concludes that the plaintiff's inability to purchase items from the commissary and outside vendors due to the fine imposed upon him is the type of harm that can be remedied by an award of money damages should the plaintiff's request for injunctive relief be denied. See Tucker, 888 F.2d at 975 (the harm "must be one requiring a remedy of more than mere money damages"). Because the plaintiff has not alleged any facts demonstrating that he will suffer irreparable harm should the court deny his request to vacate the guilty finding and expunge the $60.00 fine from his record, the motion to dismiss plaintiff's request for injunctive relief is granted.

        3.     <u>Disciplinary Report Investigator DeFrancisco</u>

The defendants argue that the plaintiff has failed to state a claim against Investigator DeFrancisco. In response, the plaintiff refers the court to the allegations in the complaint and "allow[s] the court to come to its own conclusion." Pl.'s Mem. Opp'n Amended Mot. Dismiss at 7.

The plaintiff alleges that Investigators DeFrancisco and Callender interviewed him and his cellmate on September 21, 1998, regarding the disciplinary report issued on September 10, 1998. This was the second interview conducted by Investigator Callender in connection with the September 10, 1998 disciplinary report. The plaintiff claims that Investigator DeFrancisco was indifferent to his defenses and was also hostile, threatening and illogical. The plaintiff also claims that during the interview, he handed Investigator DeFrancisco documents to be submitted

11

at the disciplinary hearing. The plaintiff alleges that he was permitted to testify and present his defenses at the disciplinary hearing. The court concludes that the plaintiff's allegations that Investigator DeFrancisco was threatening, inattentive and illogical at a pre-hearing interview do not constitute a violation of plaintiff's federally or constitutionally protected rights. Thus, the plaintiff's claims against Investigator DeFrancisco fail to state a claim upon which relief may be granted. The defendants' motion to dismiss is granted as all claims against Investigator DeFrancisco.

    4.    Due Process Claims

The defendants contend that the plaintiff's claim that he was denied due process in connection with his disciplinary hearing and his attempt to appeal the decision and sanction imposed by Hearing Officer Soto fails to state a claim. The plaintiff does not address this argument.

To state a due process claim, the plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was denied that interest without being afforded due process of law. See Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996). The plaintiff bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). If the plaintiff is unable to show the existence of a protected interest, the claim must be dismissed regardless whether the defendants acted in accordance with the requisite procedures. See Id. at 317-18.

In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court established the appropriate standard for determining the existence of a protected liberty interest in due process claims involving prison disciplinary hearings. The Court held that a protected liberty interest generally

will arise only where, as punishment for alleged misconduct, a prisoner is involuntarily placed in confinement which is "'qualitatively different' from the punishment characteristically suffered by a person convicted of a crime and results in 'stigmatizing consequences.'" Id. at 479 n.4 (quoting Vitek v. Jones, 445 U.S. 480, 493-94 (1980)). Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. Sandin, 515 U.S. at 484; see Frazier, 81 F.3d at 317.

The Second Circuit requires the district court to identify with specificity the factual predicates underlying its conclusion that sanctions do not implicate a protected liberty interest. See, e.g., Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998); Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997); Miller v. Selsky, 111 F.3d 7, 9 (2d Cir. 1997). Even where the sanctions are relatively minor, the Second Circuit has upheld the district court determination without a detailed explanation only where the record contained "detailed evidence on the typicality of [the inmate's] confinement" and the inmate had not alleged any unusual conditions. Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir.), cert. denied, 525 U.S. 907 (1998).

The plaintiff alleges only that as a result of the guilty finding, Hearing Officer Soto imposed a $60.00 fine on him. Aside from his claim that he is unable to purchase items from the commissary and outside vendors, he does not allege that he suffered any other unusual conditions of confinement or that he was prevented from participating in the same daily activities and programs as the general inmate population after the imposition of the fine. The plaintiff has no

13

constitutional right to purchase items from the commissary or outside vendors. See Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978) (under Eighth Amendment sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979).

In addition, courts have held that denial of commissary privileges do not constitute atypical and significant prison conditions. See Frazier, 81 F.3d at 317-18 (twelve days in segregated housing unit followed by thirty days of loss of recreation, commissary, package and phone privileges did not state a cognizable due process claim under Sandin); Fine v. Gallow, No. 3:97cv497(SRU), 2000 WL 565232, at * 9 (D.Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days confinement in punitive segregation and fifteen days confined to quarters, and seven days confinement in punitive segregation, fifteen days confined to quarters and thirty days loss of commissary privileges did not constitute an atypical and significant hardship); Troy v. Kuhlmann, No. 96 Civ. 7190, 1999 WL 825622, at *12 (S.D.N.Y. Oct. 15, 1999) ("denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on the inmate"). The court concludes that the imposition of a fine as a sanction for a guilty finding on a charge of destruction of property is not an "atypical or significant hardship in relation to the basic conditions of confinement in prison." See Bowman v. Wicks, No. 02-CV-813, 2002 WL 31499519, at *1 (W.D. Va. July 12, 2002) (holding that failing to permit an inmate to take an alternative drug test, placing the inmate on non-contact visitation status and imposing a fine did not constitute "a dramatic departure from the basic conditions of his sentence."). Thus, the plaintiff fails to state a

claim for the denial of due process in connection with the disciplinary hearing and attempted appeal of the guilty finding and sanction. Accordingly, the motion to dismiss is granted on this ground.

        5.        Claims Pursuant to Sections 1985, 1986 and 1988

The plaintiff claims to bring this lawsuit pursuant to 42 U.S.C. §§ 1985, 1986, 1988 as well as 42 U.S.C. § 1983. Section 1985 prohibits conspiracies to interfere with civil rights. The plaintiff's allegations fail to comport with the requirements of 42 U.S.C. § 1985(1), (2) or (3). Subsection (1) prohibits conspiracies to prevent federal officials from performing their duties. Subsection (2) of § 1985 generally prohibits conspiracies aimed at deterring witnesses from participating in either a federal or state judicial proceedings. See Chahal v. Paine Webber Inc., 725 F.2d 20, 23 (2d Cir. 1984). These two subsections are clearly inapplicable to the plaintiff's claims.

Generally, section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws. In order to state a claim pursuant to this provision, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Julian v. New York City Transit Auth., 857 F. Supp. 242, 252 ((E.D.N.Y. 1994), aff'd, 52 F.3d 312 (2d Cir. 1995). Furthermore, the conspiracy must be motivated by "'some racial or perhaps otherwise class based, invidious discriminatory animus . . . .'" Pisello v. Town of Brookhaven, 933 F. Supp. 202, 216 (E.D.N.Y. 1996) (citation omitted). Section 1985(3) may not be construed

as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971).

Here, the plaintiff alleges no facts in the amended complaint from which racial motivation for any alleged conspiracy to find him guilty of the false disciplinary report for destruction of property may be found or inferred. See Smith v. Walsh, 519 F. Supp. 853, 856 (D. Conn. 1981) (the complaint must allege that there was racial or class-based animus behind the conspiracy). Because the plaintiff fails to provide a factual basis for a conspiracy claim, the plaintiff's section 1985 claims are dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Under 42 U.S.C. § 1986, liability is imposed on an individual who has knowledge of wrongs prohibited under 42 U.S.C. § 1985, but fails to prevent them. Without a violation of § 1985, however, there can be no violation of § 1986. See Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) ("a § 1986 claim must be predicated on a valid § 1985 claim"); Seguin v. City of Sterling Heights, 968 F.2d 584, 590 (6th Cir. 1992); Koch v. Mirza, 869 F. Supp. 1031, 1038-39 (W.D.N.Y. 1994) (there can be no violation of § 1986, absent a violation of § 1985); Mahoney v. N.O.W., 681 F. Supp. 129, 135 (D. Conn. 1987) ("where a plaintiff has no cause of action under Section 1985, he can sustain no claim for neglect to prevent under Section 1986."). As stated above, the plaintiff has failed to allege a factual basis for a § 1985 claim. Because a claim under 42 U.S.C. § 1986 is contingent on a valid claim under 42 U.S.C. § 1985, the plaintiff's claims under 42 U.S.C. § 1986 must also be dismissed as to all defendants. See 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss

at any time a claim upon which relief may not be granted); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Finally, the plaintiff seeks relief pursuant to 42 U.S.C. § 1988. This section, however, does not provide an independent cause of action. See Moor v. Alameda County, 411 U.S. 693, 702-06, reh'g denied, 412 U.S. 963 (1973). Furthermore, to the extent that the plaintiff is seeking attorneys' fees pursuant to section 1988(b), his claim also fails. A pro se litigant is not entitled to attorney's fees under section 1988. See Kay v. Ehrler, 499 U.S. 432, 435 (1991); Presnick v. Santoro, 832 F. Supp. 521, 531 (D. Conn. 1993). Thus, all claims pursuant to section 1988 must be dismissed without prejudice. See 28 U.S.C. § 1915 (e)(2)(B)(ii).

D.   Conclusion

The Motion for Recusal [**doc. # 56**] is **DENIED**. The defendants' Amended Motion to Dismiss [**doc. # 47**] is **GRANTED**. All claims pursuant to 42 U.S.C. are §§ 1985, 1986, 1988 **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Clerk is directed to close this case.

SO ORDERED in Hartford, Connecticut, this 30th day of March, 2004.

Dominic J. Squatrito
United States District Judge